Paper No. 17
HRW

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB          JAN. 20, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Edward Ski Products, Inc.
_____

Serial No. 74/600,201
_____

Julie K. Morriss of Trask, Britt & Rossa
for applicant.

Andrew D. Lawrence, Trademark Examining Attorney, Law
Office 108 (David Shallant, Managing Attorney).
_____

Before Seeherman, Hairston and Wendel, Administrative
Trademark Judges.

Opinion by Wendel, Administrative Trademark Judge:

Edward Ski Products, Inc. has filed an application to

register the mark shown below for "clothing, namely, ski

masks."[1]

---

[1] Ser. No. 74/600,201, filed Nov. 17, 1994, claiming a first use
date of Dec. 1, 1978 and a first use date in commerce of Jan. 31,
1979.  The application has been amended to one seeking
registration under the provisions of Section 2(f)of the Trademark
Act.



Although there is no description of the mark in the application, it is stated in the method of use clause that "[t]he mark is used by incorporating it into the configuration of the goods and by displaying photographs and pictorial representations of the mark on packaging and advertising literature associated with the goods... ." At various points during the prosecution, applicant has referred to its mark as the "profile design" of the mask, but in the final brief applicant explicitly states that the mark sought to be registered is the configuration of the ski mask.[2]

Registration has been finally refused under Sections 1, 2, and 45 of the Trademark Act, on the ground that the proposed mark is a configuration of the goods which is de jure functional.[3] In the alternative, if the proposed mark

---

[2] The ski mask being symmetrical, the two-dimensional drawing in the application illustrates the configuration from one side. Nonetheless, a three-dimensional drawing, as originally required by the Examining Attorney, but not pursued, would have been a more accurate depiction of the mark sought to be registered. A description of the mark should also have been required. See TMEP § 808.03.

[3] As one of the amendments to the Trademark Act to implement the provisions of the Trademark Law Treaty which became effective October 30, 1998, Section 2(e) has been amended to specifically

is found to be only de facto functional, the Examining

Attorney maintains that the evidences submitted by

applicant is insufficient to demonstrate acquired

distinctiveness under Section 2(f) of the Trademark Act.

Applicant and the Examining Attorney have filed

briefs, but no oral hearing was requested.

DE JURE FUNCTIONALITY

The configuration or design of a product is de jure

functional if it is so utilitarian as to constitute a

superior design which others in the field need to be able

to copy in order to compete effectively.  In re Morton-

Norwich Products, Inc., 671 F.2d 1332, 213 USPQ 9 (CCPA

1982).  The four factors found to be useful in determining

this issue, as discussed in In re Morton-Norwich, Inc.,

*supra*, and consistently looked to by the Board, are as

follows:

    (1)  the existence of a utility patent that discloses the utilitarian advantages of the design;

    (2)  the touting by the originator of the design in advertising material of the utilitarian advantages of the design;

    (3)  facts showing the unavailability to competitors of alternative designs; and

---

incorporate the functionality doctrine into the statute in new subsection 2(e)(5), which provides for refusal if the mark "comprises any matter that, as a whole, is functional."  Section 2(f) has been amended to exclude subsection 2(e)(5) from the provisions thereof.

(4)  facts indicating that the design results from a relatively simple or cheap method of manufacturing the product.

See also In re Caterpillar Inc., 43 USPQ2d 1335 (TTAB 1997); In re American National Can Co., 41 USPQ2d 1841 (TTAB 1997); In re Honeywell Inc., 8 USPQ2d 1600 (TTAB 1988); In re Weber-Stephen Products Co., 3 USPQ2d 1659 (TTAB 1987).

With respect to the first factor, the Examining Attorney notes that applicant itself has disclosed that a utility patent has been issued to applicant's president, Joseph Edwards, for the mask.[4]  The Examining Attorney points to numerous structural elements set forth in the patent as evidence of the utilitarian advantages of the design of applicant's mask, including the specific configuration of the nose piece, the provision for a pocket around the lips so as to permit the breathing of pre-warmed air, and the incorporation of a strap design which increases the ease of wearing the mask.

Applicant argues that the design sought to be registered is but one embodiment of the structural elements set forth in the claims of the patent and that other configurations are available which would fall within the

scope of the claimed invention.  Thus, according to applicant, the present design cannot be said to be de jure functional, there being other "equally suitable" configurations for the product.  Applicant goes so far as to present drawings of potential configurations which would "ostensibly" infringe the patent, but differ in product design from the present configuration.  Applicant also argues that the fact that the present configuration is the embodiment illustrated in the patent is not indicative of any superiority of design and, furthermore, the existence of the patent is not evidence of the superiority of the design of the product, but rather of structural differences between the claimed invention and the masks of the prior art.

At the very outset, we would point out that it is a utility patent, as opposed to a design patent, which issued with the present configuration disclosed as a preferred embodiment of the claimed invention, a "cold weather face mask."  Although more than one embodiment is described in the patent, the structural elements set forth in the claims of the invention, and the resultant utilitarian advantages, must be present in each of these

---

[4] U.S. Patent No. 4,300,240, issued Nov. 17, 1981.  Taking into consideration the 17 year term for a patent, we presume the

embodiments.  Obviously there cannot be strong variations from the present design in order to assure this adherence to the metes and bounds of the claimed invention.

It is these utilitarian advantages set forth in the patent which we look to as evidence of de jure functionality.  See In re Caterpillar Inc., *supra*.  The Examining Attorney has relied in particular upon statements made in the "Background of the Invention" portion of the patent concerning the advantages of the claimed mask over prior face masks, in that prior masks did not integrate well with other outdoor apparel and were often made of knitted materials which caused water vapor to condense on the masks, and result in discomfort to the user.  Further on in the patent, we find disclosure of specific utilitarian advantages inherent in the claimed structural elements, these elements including the contour of the nose piece, the breathing aperture above the upper lip for the nostrils, the channel from the area under the chin up to a pocket for the lips, and the several apertures in the area of the mouth.  For example, it is by means of these structural features that preheated air passes upward from the body to mix with cold inhaled air to provide

---

patent has recently expired.

comfort for the user and also to permit the intake of cold air without the buildup of frozen water vapor. In another portion of the patent, the advantages of the fastening features of the claimed mask, such as the fact that the mask does not interfere with other apparel, including goggles, are described.

All in all, it is readily apparent that the present configuration, which is illustrated as a preferred embodiment in the utility patent, possesses numerous utilitarian advantages over the designs of previous face masks. Furthermore, it is the combination of the structural elements claimed in the patent which dictates the overall configuration of the mask now sought to be registered. Whether or not slight variations of the configuration are possible which would retain these advantages, the product design before us has been shown to have utilitarian advantages over previously used designs.

We turn next to the second factor, the touting by the originator of the product design of the utilitarian advantages of this configuration in its advertising material.[5] The Examining Attorney has pointed to numerous

---

[5] As noted by the Examining Attorney, the inventor named in the patent is the president of applicant, not applicant. For purposes of this proceeding, however, the advertising material of applicant will be considered advertising by the originator of the product design.

examples in the advertisements of record of the touting of these advantages, some of the strongest statements being:

> Its patented design has revolutionized face protection...

> Our new high tech engineering means comfort, warmth, easy on and off, superb fit and ventilation with no fogging.

> Thermal face protection/ Insulates, ventilates and will not fog goggles...

The specimens of record, which appear to be a card for holding the mask, list the patent number for the product and point out that the mask's "scientifically designed ventilating system keeps you warm and breathing even in waist-deep powder."

Applicant argues, however, that none of this advertising touts the configuration as being superior to other available designs. Instead, applicant contends, the advertising does no more than point out features that could be similarly touted by competitors for their designs, e.g., that it keeps the wearer warm, that it reduces fogging of goggles, that it "tucks conveniently into your pocket" and the like.

Here also the question is whether the evidence of record shows touting by applicant of the utilitarian advantages of its particular product design, not specific claims by applicant that its design is superior to all

8

other available products.  We find applicant's advertising in terms of the product's being "scientifically designed" and the result of "high tech engineering" clearly attributes the touted utilitarian advantages per se, such as thermal face protection or comfort, to the product design.  No more is necessary to construe this advertising as evidence in support of the functionality of the product design at issue.

We move to the third factor to be taken under consideration, the unavailability to competitors of alternative designs.  Here applicant contends that it has submitted evidence of other product designs that permit competitors to compete effectively.  Applicant further argues that when its patent expires, competitors will even be able to manufacture alternative designs which otherwise embody the structural elements recited in the claims of the patent.

We agree with the Examining Attorney that the alternative competitors' products of which applicant has submitted photographs, while being different in configuration, clearly do not possess the functional advantages of applicant's product design.  In the first place, these are all knitted masks, the disadvantages of which are explicitly set forth in the background section of

9

the utility patent for applicant's product.  Furthermore,
it is obvious that none of the alternatives comes close to
providing the advantages of the ventilation system which
result from the structural features of applicant's design.
These are obviously not competitive alternatives in terms
of functional advantages.  Insofar as the possibility of
copying applicant's patent after expiration, it would
appear that by granting the trademark registration
presently being sought by applicant, we would be hindering
competitors from manufacturing copies which would be truly
equivalent to applicant's design.  In other words, we would
be perpetuating the protection which has run its term in
the patent, a result contrary to the public policy
rationale behind the functionality doctrine.  See In re
Caterpillar Inc., *supra.*

     Insofar as the fourth factor is concerned, we find
little evidence of record for either position.  Although
applicant argues that manufacture is more costly for its
mask, because it must be cut from a single piece of fabric,
no specific facts or figures have been made of record to
support this claim.  The Examining Attorney's hypotheses as
to lower costs of assembly are equally without support.

     Nonetheless, we find the evidence of record with
respect to the first three factors points overwhelmingly to

the conclusion that applicant's product design, which it seeks to register as a trademark, is de jure functional. It is the combination of the utilitarian advantages resulting from the structural elements claimed in the utility patent for the ski mask (elements which dictate the overall configuration that applicant claims as its trademark), the utilitarian advantages touted by applicant's advertising, and the lack of evidence of equivalent alternative designs which leads us to the determination that applicant's ski mask design has been shown to be a superior design to those of others. We need not determine that it is *the* superior design; so long as it is *a* superior design, or one of a few superior designs, the test for de jure functionality has been met and accordingly, registration is refused. In re Morton-Norwich Products Inc., *supra*; In re Controls Corp. of America, 46 USPQ2d 1308 (TTAB 1998).

## ACQUIRED DISTINCTIVENESS

Our holding of de jure functionality bars registration, regardless of any showing of acquired distinctiveness. However, in the event applicant's configuration is ultimately found to be only de facto functional, we have taken the alternative refusal under Section 2(f) under consideration.

11

The Examining Attorney's position is quite simple: applicant has failed to demonstrate use of the product design as a trademark. He contends that the evidence submitted by applicant is indicative of the popularity of its product, not the functioning of the design per se as an indication of source for the product.

Applicant insists that the configuration of its ski mask has been consistently used and promoted as a trademark over the past nineteen years. Applicant notes that virtually every advertisement made of record includes a depiction of the configuration sought to be registered. Applicant also points to the declarations of several buyers in the ski industry which it has made of record in support of its § 2(f) claim as evidence of the association by both the buyers and their customers of the "distinctive shape" of applicant's ski mask with applicant as the source thereof. In addition, applicant claims that the evidence of record of attempts by competitors to copy the configuration should also be considered as evidence of the existence of acquired distinctiveness for applicant's product design.

The deficiency in applicant's claim of acquired distinctiveness lies in the absence of any evidence of the promotion by applicant of the configuration of its ski mask

12

*as a trademark*.  While the product design may be shown on each and every advertisement, there is no indication that potential purchasers would view this as more than a picture of the goods.  See In re Pingel Enterprise Inc., 46 USPQ2d 1811 (TTAB 1998)[consumers would not regard depiction of petcock configuration as anything more than graphic representation of the product].  The shape of the mask has not been advanced as a means of recognizing applicant as the source of the product; only the word mark THE MASQUE has been used in the manner of a trademark.

Moreover, there is no evidence to support recognition by the ultimate purchasers of the configuration as an indication of origin.  The assertions of buyers of the masks for resale in sporting good stores or ski shops, that is, persons who know the source of the masks, cannot serve to establish that the ultimate purchasers would recognize the product design as an indication that it originates from applicant.  See In re Pingel Enterprise Inc., *supra* at 1822; In re Semel, 189 USPQ 285 (TTAB 1975).  The popularity of applicant's ski mask may well result from the functional attributes which are inherent in the product design, but this popularity cannot be equated with acquired distinctiveness for the design as a trademark.  The fact that competitors are selling "knock-offs" of comparable

design may be indicative of their aims to exploit desirable functional features of the design, rather than to confuse purchasers as to the source of the goods.  See Thomas & Betts Corp. v. Panduit Corp., 65 F.3 654, 36 USPQ2d 1065 (7th Cir. 1995).

Accordingly, we find that, even if the configuration is found to be only de facto functional, the evidence submitted by applicant is insufficient to demonstrate acquired distinctiveness under Section 2(f).

Decision: The refusal to register on the ground that applicant's product design is de jure functional is affirmed.  The alternative refusal on the ground that, even if the product design is found to be only de facto functional, applicant's evidence is insufficient to demonstrate acquired distinctiveness under Section 2(f) is also affirmed.

                E. J. Seeherman

                P. T. Hairston

                H. R. Wendel
                Trademark Administrative Judges,
                Trademark Trial and Appeal Board